**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**Holding a Criminal Term**
**Grand Jury Sworn in on May 2, 2008**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No.** |
| | : | **Magistrate No.:   08-MJ-00527** |
| | : | |
| | : | **GRAND JURY ORIGINAL** |
| **v.** | : | |
| | : | **VIOLATIONS: 18 U.S.C. § 371** |
| | : | **(Conspiracy); 18 U.S.C. § 1030(a)(4)(Fraud** |
| **LABISKA GIBBS,** | : | **and Related Activity in Connection with** |
| | : | **Computers); 18 U.S.C. § 1343 (Wire Fraud);** |
| **Defendant.** | : | **18 U.S.C. § 1028A (Aggravated Identity** |
| | : | **Theft); 18 U.S.C. § 2 (Aiding and Abetting,** |
| | : | **Causing an Act to be Done); D.C. Code** |
| | : | **§§ 22-3221(a), 22-3222(a)(1) (First Degree** |
| | : | **Fraud)** |

**INDICTMENT**

The Grand Jury charges that:

─────────────────────────
### COUNT ONE
**(Conspiracy to Commit Fraud and Related**
**Activity in Connection with Computers)**

At all times material herein:

**A.    Background**

1.     The Library of Congress ("Library") was the largest library in the world.  Its collection included more than 138 million books, manuscripts, recordings, photographs, and maps.  The Library served as the primary research arm of the United States Congress and was an agency within the Legislative Branch.  The Library had a permanent staff of more than 3,600 employees, most of whom worked at the Library's James Madison Memorial Building located at 101 Independence Avenue, S.E., Washington, D.C.

2.     Like many other federal agencies, the Library used the National Finance Center

("NFC") database to provide a centralized payroll and personnel system, and to manage its Human Resources section.  The NFC database was maintained under the auspices of the United States Department of Agriculture.

3.      The NFC database included many kinds of personal information about all of the Library's employees, such as employee names, dates of birth, and Social Security Numbers. Because the NFC database contained such sensitive information, the Library took a range of steps to maintain the database's security.  Notably, the Library limited the number of employees who could access the NFC database, and those employees were required to use a personal password to access the system.

4.      Defendant LABISKA GIBBS ("GIBBS") resided in the District of Columbia at xxxxxxxxxxxxxxxxxxxx., Apartment #xx.  GIBBS had a computer and received internet service from Verizon Internet Services, Inc.

5.      Co-conspirator A was an employee of the Library and worked in the Human Resources department.  Co-conspirator A had access to the NFC database that  included the name, date of birth, and Social Security Number for all Library employees.

6.      Chase Bank USA, N.A. ("Chase Bank USA") was a Delaware corporation which provided financial services such as credit cards.  Chase Bank USA permitted individuals who wanted to open credit accounts to apply online through several websites, including www.chase.com.  When a person submitted an online application to Chase Bank USA over the internet, that application was transmitted to a server located outside of the District of Columbia.

7.      The Children's Place Retail Stores, Inc. ("The Children's Place") was a retailer of children's merchandise that offered products for sale at more than 900 retail stores located across

the country and online through their website, www.childrensplace.com. The Children's Place had several branch stores located in the area of the District of Columbia, including one branch in Arlington, Virginia. The Children's Place allowed customers to open store credit card accounts via its website. When a customer applied for credit with The Children's Place online, that application was transmitted over the internet to a server located outside of the District of Columbia.

8.      Target Corporation ("Target") was a retailer with more than 1,500 stores located throughout the United States. Target operated several stores in the area of the District of Columbia, including a store in Largo, Maryland. Target allowed customers to open store credit card accounts by applying in person at any Target store.

9.      Victoria's Secret Stores, Inc. ("Victoria's Secret") was a subsidiary of Limited Brands, Inc., with headquarters in Reynoldsburg, Ohio. Victoria's Secret was a retailer of women's lingerie and beauty products that sold its products nationwide through more than 1,300 stores and online at www.victoriasecret.com. Victoria's Secret allowed customers to open credit accounts via its website. When a customer applied for credit with Victoria's Secret online, that application was transmitted over the internet to a server located outside of the District of Columbia.

10.      Radio Shack Corp. ("Radio Shack") was a consumer electronics retailer with stores located across the country. Radio Shack sold its merchandise both in its stores and online over the internet at www.radioshack.com. Radio Shack allowed customers to open credit card accounts via its website, although those credit cards were ultimately serviced by Citibank Financial, N.A. ("Citibank"). When a customer applied for credit with Radio Shack online, that

application was transmitted over the internet to Citibank's server located outside of the District of Columbia.

11.    Circuit City Stores, Inc. ("Circuit City") was a consumer electronics retailer with more than 700 stores located across the country.  Circuit City sold merchandise both in its stores and online over the internet at www.circuitcity.com.  Circuit City allowed customers to open credit card accounts via its website, although those credit cards are ultimately serviced by Chase Bank USA.  When a customer applied for credit with Chase Bank USA, that application was transmitted over the internet to a Chase Bank USA server located outside of the District of Columbia.

12.    Gap Inc. ("Gap") was a retailer that operates more than 3,000 stores across the country.  Gap sold its merchandise through its stores and online via the website www.gap.com.  Gap allowed customers to open credit card accounts through Gap Credit Services online over the internet via its website, although those credit cards were ultimately serviced by GE Money Bank (a unit of General Electric Company).  When a customer applied for credit with Gap Credit Services, that application was transmitted over the internet to a server maintained by GE Money Bank outside of the District of Columbia.

13.    The Home Depot, Inc. ("Home Depot") was one of the world's largest retailers of home improvement materials.  Home Depot allowed its customers to apply for credit card accounts online at the website www.homedepot.com, although those credit cards were ultimately serviced by Citibank.  When a customer applied for credit with Home Depot online, that application is transmitted over the internet to Citibank's server located outside of the District of Columbia.

**A.     The Conspiracy**

14.     Beginning at a time uncertain, but beginning in or about May 2008, and continuing until on or about July 21, 2008, within the District of Columbia and elsewhere, defendant LABISKA GIBBS did knowingly and willfully conspire, combine, confederate, and agree together with Co-conspirator A and others known and unknown to the Grand Jury, to commit offenses against the United States, to wit: knowingly and with intent to defraud exceeding access to a protected computer and by means of such conduct furthering the intended fraud in violation of 18 U.S.C. § 1030(a)(4), and committed acts in furtherance of that conspiracy.

**B.     The Goal of the Conspiracy**

15.     The goal of the conspiracy was for the co-conspirators to obtain personal identity information of Library employees (such as the name, date of birth, Social Security Number, home phone number, and home address) and fraudulently to enrich themselves by using that identity information to open credit accounts and make fraudulent purchases in the employees' names.

**C.     Manner and Means of the Conspiracy**

16.     Co-conspirator A, who worked in the Human Resources department at the Library and had access to the NFC database, would enter the database and obtain the personal identity information of Library employees.  This identity information included personal matters such as the employees' date of birth, Social Security Number, home address, and home phone number. Co-conspirator A would then provide that information to GIBBS by speaking to GIBBS on a cellular telephone while Co-conspirator A was located in the District of Columbia.

5

17.     Once GIBBS had the identity information of Library employees, GIBBS would use that information to open credit accounts at various online retailers or in person at various retail stores in Virginia and Maryland.  In order to facilitate in-person transactions, GIBBS would obtain false identification documents featuring her own picture and the identity information for the various Library employees.

18.     Once GIBBS had opened the credit accounts in the names of the Library employees, GIBBS would either make purchases of merchandise herself or purchase gift cards from the retailer on the Library employee's credit.  GIBBS would then re-sell the gift cards to unwitting purchasers at below face value and for GIBBS' own personal profit.

**D.     Overt Acts in Furtherance of the Conspiracy**

19.     Within the District of Columbia, and elsewhere, in furtherance of the above described conspiracy and in order to carry out the objects thereof, defendants GIBBS and Co-conspirator A and others known and unknown to the Grand Jury, committed the following overt acts, among others:

**Overt Act as to All Victims**

A.     On or before May 15, 2008, the precise date being unknown to the Grand Jury, GIBBS and Co-conspirator A discussed using Co-conspirator A's access to the NFC database at the Library to obtain the personal identity information of Library employees.

**Overt Acts as to Victim E.Y.**

B.     At a time on or before May 15, 2008, the precise date being unknown to the Grand Jury, Co-conspirator A accessed the NFC database and obtained the

personal identity information of Library Employee E.Y.

C.      At a time on or before May 15, 2008, the precise date being unknown to the Grand Jury, Co-conspirator A spoke to GIBBS on that individual's personal cellular phone and told GIBBS the personal identity information of E.Y.  Co-conspirator A spoke to GIBBS using his personal cellular phone and was standing outside of the Library in the District of Columbia at the time he spoke to GIBBS.

D.      On or about May 15, 2008, GIBBS used the personal identity information of E.Y. to apply for a credit account online with The Children's Place.  GIBBS made this application over the internet from a computer located inside of her personal residence.

E.      At a time on or before May 16, 2008, the precise date being unknown to the Grand Jury, GIBBS created or obtained one or more false photo identification documents with the personal identity information of E.Y.

F.      On or about May 16, 2008, GIBBS used the personal identity information of E.Y. to apply online for a credit account with Chase Bank USA.  GIBBS made this application over the internet from a computer located inside of her personal residence.

G.      On or about May 16, 2008, GIBBS used the personal identity information of E.Y. to apply online for a credit account with Home Depot.  GIBBS made this application over the internet from a computer located inside of her personal residence.

H.      On or about May 16, 2008, GIBBS used the personal identity information of E.Y.

to open a credit account at the Target store located in Largo, Maryland.  GIBBS presented a false identification document with E.Y.'s personal identity information in order to obtain this account.   GIBBS then purchased $600.00 in gift cards at this same Target location.

I.  On or about May 17, 2008, GIBBS went to the Children's Place store in Arlington, Virginia, and purchased $1500 in gift cards using the credit account of E.Y. that had been previously opened online.

J.  On or about May 17, 2008, GIBBS used the credit account opened the previous day with the personal identity information of E.Y. at the Home Depot store located in Springfield, Virginia. GIBBS purchased two $2500 gift cards from that store using E.Y.'s credit account.

K.  On or about May 18, 2008, GIBBS used the personal identity information of E.Y. to open a credit account online at the Victoria's Secret website.  GIBBS made this application over the internet from a computer located inside of her personal residence.  GIBBS then purchased more than $500 worth of merchandise using the account opened in E.Y.'s name.  This merchandise was then shipped to GIBBS's personal residence.

## Overt Acts as to Victim M.W.

L.  At a time on or before May 16, 2008, the precise date being unknown to the Grand Jury, Co-conspirator A accessed the NFC database and obtained the personal identity information of Library Employee M.W.

M.  At a time on or before May 16, 2008, the precise date being unknown to the

Grand Jury, Co-conspirator A spoke to GIBBS on that individual's personal

cellular phone and told GIBBS the personal identity information of M.W.  Co-

conspirator A spoke to GIBBS using his personal cellular phone and was standing

outside of the Library in the District of Columbia at the time he spoke to GIBBS.

N.      At a time on or before May 16, 2008, the precise date being unknown to the

Grand Jury, GIBBS created one or more false photo identification documents with

the personal identity information of M.W.

O.      On or about May 16, 2008, GIBBS used the personal identity information of

M.W. to open a credit account at the Target store located in Largo, Maryland.

GIBBS presented a false identification document with the personal identity

information of M.W. while applying for this account.  GIBBS then purchased

$500.00 in gift cards on that account.

P.      On or about May 18, 2008, GIBBS used the personal identity information of

M.W. to apply for a credit account online with Chase Bank USA.  GIBBS made

this application over the internet from a computer located inside of her personal

residence.

**<u>Overt Acts as to Victim L.R.</u>**

Q.      At a time on or before May 29, 2008, the precise date being unknown to the

Grand Jury, Co-conspirator A accessed the NFC database and obtained the

personal identity information of Library employee L.R.

R.      At a time on or before May 29, 2008, the precise date being unknown to the

Grand Jury, Co-conspirator A spoke to GIBBS on that individual's personal

cellular phone and told GIBBS the personal identity information of L.R.  Co-conspirator A spoke to GIBBS using his personal cellular phone and was standing outside of the Library in the District of Columbia at the time he spoke to GIBBS.

S.      At a time on or before May 30, 2008, the precise date being unknown to the Grand Jury, GIBBS created one or more false photo identification documents with the personal identity information of L.R.

T.      On or about May 30, 2008, GIBBS used the personal identity information of L.R. to apply online for a credit account with Gap Credit Service.  GIBBS made this application over the internet using a computer located inside of GIBBS's personal residence.  This application for credit was ultimately denied by Gap Credit Service.

U.      On or about May 29, 2008, GIBBS used the personal identity information of L.R. to apply online for a credit account with The Children's Place.  GIBBS made this application over the internet using a computer located inside of GIBBS's personal residence.  GIBBS used the credit account of L.R. at The Children's Place store in Arlington, Virginia, to purchase $1,000 in gift cards.

V.      On or about May 30, 2008, GIBBS used the personal identity information of L.R. to open a credit account at the Target store located in Largo, Maryland.  In order to apply for this credit account, GIBBS presented a false identification document that included the personal identity information of L.R.   GIBBS purchased $600.00 in gift cards at this Target location.

**Overt Acts as to Victim G.H.**

W.     At a time on or before May 27, 2008, the precise date being unknown to the

Grand Jury, Co-conspirator A accessed the NFC database and obtained the

personal identity information of Library employee G.H.

X.     At a time on or before May 27, 2008, the precise date being unknown to the

Grand Jury, Co-conspirator A spoke to GIBBS on that individual's personal

cellular phone and told GIBBS the personal identity information of G.H.  Co-

conspirator A spoke to GIBBS using his personal cellular phone and was standing

outside of the Library in the District of Columbia at the time he spoke to GIBBS.

Y.     At a time on or before May 27, 2008, the precise date being unknown to the

Grand Jury, GIBBS created one or more false photo identification documents with

the personal identity information of G.H.

Z.     On or about May 27, 2008, GIBBS used the personal identity information of G.H.

to apply online for a credit account with Home Depot.  GIBBS made this

application over the internet using a computer located in Washington, D.C.   This

application  was ultimately approved by Home Depot for a credit line of $10,000.

AA.    On or about May 27, 2008, GIBBS opened a credit account using the personal

identity information of G.H. at The Children's Place store in Arlington, Virginia.

In applying for the credit account, GIBBS presented a false identification

document that included the personal identity information of G.H.  The store

approved a credit line of $1,500 on the account that GIBBS opened using the

identity information of G.H.  GIBBS immediately purchased $1500 worth of gift

cards from the store.

BB.      On or about May 28, 2008, GIBBS went to the Home Depot store located in

Capitol Heights, Maryland, and purchased two gift cards each in the amount of

$5,000 using the credit account that GIBBS had opened with the personal identity

information of G.H.

CC.      On or about May 28, 2008, GIBBS sold one of the two Home Depot gift cards that

GIBBS had purchased with the account fraudulently opened in G.H.'s name to an

individual whose identity is known to the Grand Jury.  This transaction occurred

outside of the Home Depot store in Capitol Heights, Maryland.

DD.      On or about May 28, 2008, GIBBS used the personal identity information of G.H.

to apply online for a credit account with Chase Bank USA.  GIBBS made this

application over the internet using a computer located within the District of

Columbia.  This application for credit was denied by Chase Bank USA.

EE.      On or about May 28, 2008, GIBBS used the personal identity information of G.H.

to apply online for a credit account with Victoria's Secret.  GIBBS made this

application over the internet using a computer located inside of an apartment

located within the District of Columbia.  This application for credit was denied.

**Overt Acts as to Victim L.T.**

FF.      At a time on or before May 30, 2008, the precise date being unknown to the

Grand Jury, Co-conspirator A accessed the NFC database and obtained the

personal identity information of Library employee L.T.

GG.      At a time on or before May 30, 2008, the precise date being unknown to the

Grand Jury, Co-conspirator A spoke to GIBBS on that individual's personal cellular phone and told GIBBS the personal identity information of L.T.  Co-conspirator A spoke to GIBBS using his personal cellular phone and was standing outside of the Library in the District of Columbia at the time he spoke to GIBBS.

HH.   At a time on or before May 30, 2008, the precise date being unknown to the Grand Jury, GIBBS created one or more false photo identification documents with the personal identity information of L.T.

II.   On or about May 30, 2008, GIBBS applied for a credit account at the Target Store in Largo, Maryland, using the personal identity information of L.T.  In applying for that credit account, GIBBS presented a false identification document that included the personal identity information of L.T.  GIBBS received $600.00 worth of credit and immediately purchased $200.00 worth of gift cards.

JJ.   On or about May 30, 2008, GIBBS applied for a credit account at The Children's Place store in Arlington, Virginia, using the personal identity information of L.T. This application for credit was denied by The Children's Place.

**Overt Acts as to Victim R.P.**

KK.   On or before May 29, 2008, Co-conspirator A accessed the NFC database and obtained the personal identity information of Library employee R.P.

LL.   On or before May 29, 2008, Co-conspirator A spoke to GIBBS on that individual's personal cellular phone and told GIBBS the personal identity information of R.P. Co-conspirator A spoke to GIBBS using his personal cellular phone and was standing outside of the Library in the District of Columbia at the

time he spoke to GIBBS.

MM.     On or about May 29, 2008, GIBBS used the personal identity information of R.P. to apply for a credit account online with Radio Shack.  GIBBS made this application over the internet from a computer located inside of her personal residence.  This application for credit was denied by Radio Shack.

NN.     On or about May 29, 2008, GIBBS used the personal identity information of R.P. to apply for a credit account online with Victoria Secret.  This application for credit was denied by Victoria's Secret.

**Overt Acts as to Victim J.D.**

OO.     On or before May 29, 2008, Co-conspirator A accessed the NFC database and obtained the personal identity information of Library employee J.D.

PP.     On or before May 29, 2008, Co-conspirator A spoke to GIBBS on that individual's personal cellular phone and told GIBBS the personal identity information of J.D. Co-conspirator A spoke to GIBBS using his personal cellular phone and was standing outside of the Library in the District of Columbia at the time he spoke to GIBBS.

QQ.     On or about May 29, 2008, GIBBS used the personal identity information of J.D. to apply for a credit account with Radio Shack.  This application for credit was denied by Radio Shack.

RR.     On or about June 3, 2008, GIBBS used the personal identity information of J.D. to apply for a credit account online with Circuit City.  GIBBS made this application over the internet from a computer located inside of her personal residence.  This

application for credit was approved for $6000.

SS.     On or about June 3, 2008, GIBBS used the personal identity information of J.D. to

apply for a credit account online with Victoria Secret.  This application for credit

was approved for $500.00.

### Overt Acts as to Victim N.M.

TT.     On or before May 27, 2008, Co-conspirator A accessed the NFC database and

obtained the personal identity information of Library employee N.M.

UU.     On or before May 27, 2008, Co-conspirator A spoke to GIBBS on that

individual's personal cellular phone and told GIBBS the personal identity

information of N.M. Co-conspirator A spoke to GIBBS using his personal cellular

phone and was standing outside of the Library in the District of Columbia at the

time he spoke to GIBBS.

VV.     On or about May 27, 2008, GIBBS used the personal identity information of N.M.

to apply online for a credit account with Home Depot.  GIBBS made this

application over the internet using a computer located inside of GIBBS's personal

residence.  This application for credit was ultimately denied by Home Depot.

### Overt Acts as to Victim K.P.

WW.     On or before May 30, 2008, Co-conspirator A accessed the NFC database and

obtained the personal identity information of Library employee K.P.

XX.     On or before May 30, 2008, Co-conspirator A spoke to GIBBS on that

individual's personal cellular phone and told GIBBS the personal identity

information of K.P. Co-conspirator A spoke to GIBBS using his personal cellular

phone and was standing outside of the Library in the District of Columbia at the time he spoke to GIBBS.

YY.   On or about May 30, 2008, GIBBS used the personal identity information of K.P. to apply for a credit account online with Victoria's Secret.   This application for credit was denied by Victoria's Secret.

### Overt Acts as to Victim M.D.

ZZ.   On or before June 6, 2008, Co-conspirator A accessed the NFC database and obtained the personal identity information of Library employee M.D.

AAA.   On or before June 6, 2008, Co-conspirator A spoke to GIBBS on that individual's personal cellular phone and told GIBBS the personal identity information of M.D. Co-conspirator A spoke to GIBBS using his personal cellular phone and was standing outside of the Library in the District of Columbia at the time he spoke to GIBBS.

BBB.   On or before June 6, 2008, the precise date being unknown to the Grand Jury, GIBBS created one or more false photo identification documents with the personal identity information of M.D.

CCC.   On or about June 6, 2008, GIBBS used the personal identity information of M.D. to open a credit account at the Target store located in Largo, Maryland.   In applying for the account, GIBBS presented a false identification document that included the identity information of M.D.   GIBBS obtained a credit line of $12,500.   However, GIBBS was only able to purchase $700.00 worth of gift cards at that time.

DDD.  On or about June 6, 2008, GIBBS used the personal identity information of M.D.

to apply online for a credit account with The Children's Place.  Gibbs then

purchased $1500 in gift cards at the Arlington, Virginia, store location.

**(Conspiracy, Aiding and Abetting, Causing an Act
to be Done, in violation of 18 U.S.C. §§ 371 and 2)**

## COUNT TWO
**(Wire Fraud)**

**A.      The Scheme and Artifice to Defraud**

20.     From in or about May 2008 until in or about July 2008, in the District of

Columbia and elsewhere, defendant LABISKA GIBBS did devise, participate in and execute a

scheme and artifice to defraud and to obtain money and property by means of materially false and

fraudulent pretenses, representations and promises as more fully described in paragraphs 1

through 19 above, which are incorporated here by reference.

**B.      Purpose of the Scheme and Artifice**

21.     A purpose of the scheme and artifice was for defendant LABISKA GIBBS to

fraudulently obtain moneys, funds and property from online credit services and retailers for her

own use and benefit and to further the scheme by various means, including omissions of material

fact, false material pretenses, representations and promises.

**C.      Manner and Means**

22.     It was a part of the scheme and artifice that during May 2008 and June 2008,

defendant GIBBS would obtain the personal identity information of people other than herself

(such as their name, date of birth, Social Security Number, home phone number, and home

address).

23.     It was further a part of the scheme and artifice that after obtaining the personal identity information of other people, GIBBS would apply online to open credit accounts in those individuals' names using their personal identity information.

24.     It was further a part of the scheme and artifice that GIBBS would make those online applications from personal computers located at her own residence and elsewhere within the District of Columbia.

25.     It was further a part of the scheme and artifice that in instances where GIBBS was permitted to open accounts using the personal identity information of other people, GIBBS would make purchases on those accounts that GIBBS had fraudulently opened.

**D.      Use of the Interstate Wires to
         Execute the Scheme and Artifice**

26.     On or about the dates listed below, within the District of Columbia and elsewhere, defendant LABISKA GIBBS, for the purpose of executing the above-described scheme and artifice to defraud and attempting to do so, did transmit and cause to be transmitted certain writings, signs, signals, and pictures by means of wire communications in interstate and foreign commerce, that is, online applications for credit using the personal identity information of the listed victims submitted over the internet to the online credit services and retailers listed below:

|   | **Date** | **Victim** | **Online Credit Service or Retailer** |
|---|----------|------------|----------------------------------------|
| A | May 14, 2008 | L.C. | Home Depot |
| B | May 15, 2008 | E.Y. | The Children's Place |
| C | May 16, 2008 | E.Y. | Home Depot |
| D | May 16, 2008 | E.Y. | Chase Bank USA |
| E | May 18, 2008 | M.W. | Chase Bank USA |

|   | Date | Victim | Online Credit Service or Retailer |
|---|------|--------|-----------------------------------|
| F | May 18, 2008 | E.Y. | Victoria's Secret |
| G | May 20, 2008 | D.G. | Home Depot |
| H | May 26, 2008 | J.C. | Home Depot |
| I | May 27, 2008 | G.H. | Home Depot |
| J | May 27, 2008 | N.M. | Home Depot |
| K | May 28, 2008 | G.H. | Chase Bank USA |
| L | May 28, 2008 | G.H. | Victoria's Secret |
| M | May 29, 2008 | L.R. | The Children's Place |
| N | May 29, 2008 | R.P. | Radio Shack |
| O | May 29, 2008 | R.P. | Radio Shack |
| P | May 30, 2008 | L.R. | Gap Credit Services |
| Q | May 30, 2008 | K.P. | Victoria's Secret |
| R | June 3, 2008 | J.D. | Circuit City |
| S | June 3, 2008 | J.D. | Victoria's Secret |
| T | June 6, 2008 | M.D. | The Children's Place |

**(Fraud by Wire, Aiding and Abetting, Causing an
Act to be Done,  in violation of 18 U.S.C. §§ 1343 and 2)**

### COUNT THREE
**(Aggravated Identity Theft)**

27.     Paragraphs 1 through 26 are realleged as if specifically set forth.

28.     On or about the dates listed below, in the District of Columbia and elsewhere, the

defendant, LABISKA GIBBS, did knowingly transfer, possess, and use, without lawful authority,

a means of identification of another person during and in relation to a violation of 18 U.S.C.

§ 1343 (Wire Fraud):

|  | **Date** | **Victim** | **Wire Fraud** |
|---|---|---|---|
| A | May 14, 2008 | L.C. | Online application to Home Depot (Count 2A) |
| B | May 15, 2008 | E.Y. | Online application to The Children's Place (Count 2B) |
| C | May 16, 2008 | E.Y. | Online application to Home Depot (Count 2C) |
| D | May 16, 2008 | E.Y. | Online application to Chase Bank USA (Count 2D) |
| E | May 18, 2008 | M.W. | Online application to Chase Bank USA (Count 2E) |
| F | May 18, 2008 | E.Y. | Online application to Victoria's Secret (Count 2F) |
| G | May 20, 2008 | D.G. | Online application to Home Depot (Count 2G) |
| H | May 26, 2008 | J.C. | Online application to Home Depot (Count 2H) |
| I | May 27, 2008 | G.H. | Online application to Home Depot (Count 2I) |
| J | May 27, 2008 | N.M. | Online application to Home Depot (Count 2J) |
| K | May 28, 2008 | G.H. | Online application to Chase Bank USA (Count 2K) |
| L | May 28, 2008 | G.H. | Online application to Victoria's Secret (Count 2L) |
| M | May 29, 2008 | L.R. | Online application to The Children's Place (Count 2M) |
| N | May 29, 2008 | R.P. | Online application to Radio Shack (Count 2N) |
| O | May 29, 2008 | R.P. | Online application to Radio Shack (Count 2O) |
| P | May 30, 2008 | L.R. | Online application to Gap Credit Services (Count 2P) |

| | Date | Victim | Wire Fraud |
|---|---|---|---|
| Q | May 30, 2008 | K.P. | Online application to Victoria's Secret (Count 2Q) |
| R | June 3, 2008 | J.D. | Online application to Circuit City (Count 2R) |
| S | June 3, 2008 | J.D. | Online application to Victoria's Secret (Count 2S) |
| T | June 6, 2008 | M.D. | Online application to The Children's Place (Count 2T) |

**(Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A)**

**COUNT FOUR**
**(First Degree Fraud, D.C. Code §§ 22-3221(a), 22-3222(a)(1))**

29.     Paragraphs 1 through 19 are realleged as if specifically set forth.

30.     From in or about May 2008 until in or about July 2008, in the District of Columbia, defendant LABISKA GIBBS did engage in a scheme and systematic course of conduct with intent to defraud and to obtain property of another by means of a false or fraudulent pretense, representation, or promise and thereby obtained property of another having a value greater than $250.

**(First Degree Fraud, in violation of D.C. Code §§ 22-3221(a) and 22-3222(a)(1))**

A TRUE BILL


FOREPERSON.


ATTORNEY FOR THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA

21